IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sammy Davis Mims,            ) | |
| ) | Cr. No. 1:08-729 |
| Movant,      ) | |
| ) | |
| vs.                                ) | |
| ) | **OPINION AND ORDER** |
| United States of America,   ) | |
| ) | |
| Respondent.  ) | |
| _____) | |

Movant Sammy Davis Mims is a federal inmate currently housed at FCI-Miami in Miami, Florida. This matter is before the court on motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, which motion was filed by Movant, proceeding pro se, on October 15, 2012. Respondent United States of America (the "government") filed a motion for summary judgment on December 13, 2012. By order filed December 13, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Movant filed a reply on January 22, 2013.

I. FACTS AND PROCEDURAL BACKGROUND

On May 20, 2009, Movant was named in a thirty-seven count superseding indictment charging him with conspiracy to possess with intent to distribute and distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count 1); using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) and 924(c)(1)(A)(i) (Counts 19, 36), and felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e) (Count 20). Movant proceeded to trial on June 17, 2009.

Respondent the United States of America (the "government") first called Detective Phillip Turner of the North Augusta, South Carolina, Department of Public Safety to the stand. Among other things, Turner described the investigation that resulted in the indictment of Movant. Turner testified that he and other law enforcement officers approached Movant's residence in connection with another incident in the vicinity. Movant was taken into custody on the basis of an outstanding warrant. Subsequent to his arrest, Movant was read his Miranda warnings and gave consent to have his residence searched. Jury Trial Testimony, ECF No. 717, 19-23. Discovered in the residence were three .22 caliber rifles, spoons with residue on them, a clear plastic bag containing a white powder substance, and a copper scouring pad. Id. at 24-25. Turner testified that copper scouring pads are commonly used as filters in cocaine base ("crack") smoking devices, and that spoons can be used for measuring cocaine and cutting agents, and some users ingest cocaine from a spoon. Id. at 27-28. Turner further testified that the white powder substance was baking soda or some other material used to start the chemical reaction to turn cocaine powder into cocaine base. Id. at 28-29. Also discovered in the residence was a battery-powered digital scale. Turner testified that scales commonly are used in drug activity to measure drug weight. Id. at 28. According to Turner, Movant confessed that two of the rifles seized in the residence had been traded for crack; that is, Movant distributed to people in exchange for the weapons. Id. at 65.

The government called Kelly Cullum Busbee to the stand. Busbee, a co-defendant in Movant's case, testified pursuant to a plea agreement. Id. at 96. Busbee testified that she commenced purchasing $10 to $20 pieces of crack from Movant around 2004. Id. at 113, 115. Busbee testified that she saw Movant sell crack to others at his house. She also testified that she and others would give him money and he would purchase crack. Id. at 127-28. Busbee testified that she

purchased more than 50 grams of crack from Movant over the course of their dealings. Id. at 131. According to Busbee, individuals staying at Movant's residence would run after drugs for him. Id. at 132. Busbee was at Movant's residence at least once a week and often every day. Id. at 143. Busbee testified that she and Movant smoked crack together. Id. Busbee testified that Movant spent his money on crack and was not in the crack business for profit. Id. at 145.

The government next called Corey Sapp. Sapp, a co-defendant in Movant's case, testified pursuant to a plea agreement. Id. at 162. Sapp testified that he sold cocaine base to Movant three or four times a day, and that Movant was buying drugs for his own use and for other persons. Id. at 178. Sapp testified that Movant also purchased drugs from other dealers. According to Sapp, he distributed at least 50 grams of cocaine base to Movant over the course of their dealings. Sapp testified that he saw Movant sell crack to other users, and that Movant made money from sales. Id. at 188. Movant spent the profits on crack. Id. at 189.

Trial reconvened on June 18, 2009. The government called Earnest Curry, another co-defendant who testified pursuant to a plea agreement. ECF No. 718, 16. Curry testified that he saw Movant purchase cocaine base from another co-defendant, Freddie Curry, sometimes three times a day. Id. at 27. Curry also testified that Movant purchased crack two to three times a day. Id. He also saw Movant purchase crack from other individuals. Id. According to Curry, Movant would run errands for Freddie Curry and allowed Freddie Curry to manufacture cocaine base at his residence. Id. at 42-44. Curry testified that he saw Movant sell cocaine base from his house several times. Id. at 45.

The government next called Kenneth Marciniack. Marciniack was another co-defendant who testified pursuant to a plea agreement. Id. at 68. Marciniack testified that he saw Movant purchase

drugs from Freddie Curry on numerous occasions. Id. at 85.

The government called Jacobe Reedy to the stand. Reedy also was a co-defendant who testified pursuant to a plea agreement. Id. at 97. Reedy testified that he sold small amounts of crack to Movant on numerous occasions. Id. at 110. Reedy testified that he saw Movant sell drugs at his house in exchange for money. Id. at 110. He also saw Movant buying drugs from other individuals. Id. at 117. Reedy testified that Movant was an addict who smoked a lot of crack. Id. at 120.

The government next called Dennis Sullivan to the stand. Sullivan was another co-defendant who testified pursuant to a plea agreement. Id. at 127. Sullivan was a dealer who purchased cocaine in kilo quantities from Freddie Curry. Sullivan testified that he never sold Movant drugs because Movant "was really basically a smoker and I just didn't–basically he was kind of down on the totem pole so I just didn't never do that." Id. at 152. Sullivan saw Movant purchase drugs from other co-defendants. Id.

The government next called Joseph Urciolo, another co-defendant who testified pursuant to a plea agreement. Id. at 163. Urciolo testified that he commenced purchasing cocaine base from Movant in December 2004. Urciolo testified that he would provide money to Movant, who often would leave the residence on foot to purchase drugs and then return. Id. at 175. Urciolo purchased exclusively from Movant until February 2005, when he bypassed Movant and commenced purchasing directly from Movant's suppliers. Id. at 177. In approximately 2007 Urciolo returned to purchasing cocaine base from Movant. Id. at 182. Movant and Urciolo smoked crack together. Id. at 183. Urciolo testified that he saw Movant sell crack to other users. Id. at 185.

The government called Richard Stevens to the stand. Stevens also was a co-defendant who testified pursuant to a plea agreement. Id. at 205. Stevens testified that he first purchased cocaine

base from Movant in 2003. Id. at 211. Stevens testified that he purchased from Movant nearly every day. Id. at 214. In 2006 Stevens' house burned down and he started living with Movant. Id. at 215. Stevens stated that he saw people giving Movant money for drugs on a daily basis. Id. at 217. On Thursdays and Fridays as many as twenty people would purchase crack from Movant. Id. at 218. According to Stevens, people also would trade food, guns, gasoline, prepaid credit cards, and electronics for drugs. Id. at 218-19. Stevens saw Freddie Curry preparing crack cocaine at Movant's residence. Id. at 220. Eventually Stevens served as Movant's doorman. Id. at 221. In exchange, Movant would provide him with crack. Id. at 227. At one time Freddie Curry went on vacation and referred his customers to Movant. Id. Stevens also acted as a lookout for Freddie Curry. Id. at 230. Stevens testified that Movant was a heavy crack smoker. Id. at 238.

The government next called Special Agent Matthew Morlan with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Id. at 248. Morlan testified that when Movant was arrested on October 26, 2007, he admitted to trading crack on separate occasions for rifles in February 2007. Id. at 261. Movant told Morlan he purchased crack from ten to twenty different sources. Id. at 263. Morlan testified that Movant also admitted to purchasing cocaine base for other persons. Id.

On June 19, 2009, the government rested. Counsel for Movant made a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 as to Counts 19 and 36 only. The government dismissed Count 36 and proceeded to the jury solely on Counts 1 and 19, and 20. On June 19, 2009, a jury found Movant guilty as to Counts 1 and 20, and not guilty as to Count 19. On March 17, 2010, Movant was sentenced to incarceration for a period of 240 months, consisting of 240 months as to Count 1 and 120 months as to Count 20, to run concurrently. Judgment was entered on March 23,

2010. The Court of Appeals for the Fourth Circuit affirmed Movant's conviction and sentence on July 1, 2011. See United States v. Mims, 437 F. App'x 253 (4th Cir. 2011).

## II. DISCUSSION

Movant raises the following grounds for relief in his § 2255 motion:

GROUND ONE: Trial counsel was ineffective for failure to file a Rule 29 motion as to count one. Evidence submitted at trial showed that [Movant] merely facilitated sales and provided a market for his own drug consumption needs and counsel was ineffective for failure to file a Rule 29 motion, as to count one, in light of this evidence.

GROUND TWO: Trial counsel was ineffective for failure to request a buyer-seller jury instruction. Evidence submitted at trial showed that [Movant] purchased small quantities of drugs–over a period of time–for others, from several individuals, for their and his personal drug consumption versus an agreement to work together to further the distribution to third parties, and counsel was ineffective for fail[ure] to request a buyer-seller jury instruction in light of this evidence.

GROUND THREE: Trial counsel was ineffective for failure to challenge the sufficiency of the evidence as to Count One. The Government produced evidence that proved a conspiracy to manufacture but fell short of producing the requisite evidence of an agreement between [Movant] and others to work together to further the distribution of drugs to third parties and counsel was ineffective for failure to challenge the sufficiency of such evidence.

GROUND FOUR: Appellate counsel was ineffective for failure to raise any viable claims on appeal. Counsel raised an issue on appeal that was inapplicable to [Movant] instead of raising any issues of error at trial. This failure by counsel to raise any viable claims denied [Movant's] right to appellate review.

See generally ECF No. 1058, 4-8.

### Law/Analysis

Movant contends he received ineffective assistance of counsel. To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate

that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

A.  Trial Counsel Was Ineffective for Failing to Challenge the Sufficiency of the Evidence As to Count 1 (Grounds One and Three)

In reviewing the sufficiency of the evidence supporting a conviction, the standard of review is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Armstrong, 494 F. App'x 297, 299 (4th Cir. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "A defendant challenging the sufficiency of the evidence supporting his conviction bears 'a heavy burden,'" id. (quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)), "and that a conviction must be upheld if the evidence, viewed in the light most favorable to the government, supports the verdict." Id. (citing United States v. Stewart, 256 F.3d 231, 249 (4th Cir. 2001)). The question is whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. United States v. Cone, 714 F.3d 197, 212 (4th Cir. 2013) (citing United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005)). The court may review both direct and circumstantial evidence, and accord the government all reasonable inferences from the

facts shown to those sought to be established. Id. (citing United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008)). The court does not review the credibility of the witnesses and assumes that the jury resolved all contradictions in the testimony in favor of the government. Id. (citing United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007)).[1]

As noted hereinabove, trial counsel made Rule 29 motions as to Counts 19 and 36. Trial counsel was successful as to Count 36, and the jury acquitted Movant as to Count 19. Thus, it would appear that counsel made a reasonable strategic decision to challenge the evidence as to those counts he perceived he would have a possibility of success. See United States v. Mayberry, 341 F. App'x 859, 862 (4th Cir. 2009) (discussing cases wherein counsel was not ineffective for making reasonable strategic decisions).

Even if trial counsel's performance were deficient, Movant cannot show prejudice. As described in detail hereinabove, numerous co-defendants testified as to Movant's participation in the conspiracy referenced in Count 1. Further, Movant himself admitted that he purchased and sold cocaine base and that he traded drugs for weapons. Grounds One and Three are without merit.

B.     Trial Counsel was Ineffective for Failing to Request Buyer-Seller Jury Charge (Ground Two)

The critical inquiry in a conspiracy case concerns whether the government proved "agreement between at least two persons to concerted action." United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993)(citing United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991)). A buyer-seller instruction informs the jury that the mere purchase and sale of narcotics is standing alone insufficient evidence upon which to establish a conspiracy to distribute narcotics. United States v. Grover, 85 F.3d 617,

---

[1] The same test applies for both motions for judgment of acquittal brought pursuant to Fed. R. Crim. P. 29 and challenges to the sufficiency of the evidence. See, e.g., United States v. Cone, 714 F.3d 197, 213 (4th Cir. 2013).

8

*10 n.12(4th Cir. 1996) (unpublished) (citing <u>Mills</u>, 995 F.2d 480, 485 & n.1 (4th Cir. 1993)). Evidence of a buy-sell transaction is probative on the issue of whether a conspiratorial relationship exists. <u>Mills</u>, 995 F.2d at 485 n.1. Moreover, evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, can support a reasonable inference that the parties were coconspirators. <u>Id.</u>

Assuming for purposes of summary judgment that trial counsel was ineffective for failing to request a buy-sell instruction, the court discerns no prejudice. The evidence demonstrated that Movant purchased cocaine base from various co-defendants and that he sold and traded cocaine base to co-defendants and others. Movant allowed a co-defendant, Freddie Curry, to manufacture cocaine base in his home. He also provided cocaine base for Freddie Curry's customers when Freddie Curry was unavailable for a length of time. Movant retained drug paraphernalia in his residence, including instruments used in manufacturing cocaine base. Although Movant was a heavy user, his relationships with the other members of the conspiracy "went beyond that of [] mere buy-sell transaction[s]." Ground Three is without merit.

C.     <u>Appellate Counsel was Ineffective for Failing to Raise Viable Claims</u> (Ground Four)

Movant fails to explain what issues appellate counsel should have raised on appeal. Vague and conclusory allegations in a § 2255 motion may be disposed of without further investigation by the court. <u>United States v. Dyess</u>, 730 F.3d 354, 359 (4th Cir. 2013) (quoting <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3d Cir. 2000)). To the extent Movant asserts that appellate counsel should have raised Grounds One, Two, and Three contained in Movant's § 2255, it is axiomatic that failure to raise a meritless claim cannot serve as a ground for ineffective assistance of counsel. <u>See</u> <u>Bolender v. Singletary</u>, 16 F. 3d 1547, 1573 (11th Cir. 1994). Ground Four is without merit.

III. CONCLUSION

For the reasons stated, Respondent's motion for summary judgment (ECF No. 1068) is **granted**, and Movant's § 2255 motion is **denied and dismissed, with prejudice**.

IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that Movant has not made the requisite showing.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

January 21, 2015

**NOTICE OF RIGHT TO APPEAL**

**Movant is hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**

10